UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JACKIE S. BERGER,

     Plaintiff,

v.                               Case No. 3:21cv239-MCR-HTC

OFFICER YOUNG, et al.,

     Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Plaintiff Jackie Berger's *pro se* second amended complaint seeking to assert claims under 42 U.S.C. § 1983 for deliberate indifference and excessive force.  The matter was referred to the undersigned Magistrate Judge for preliminary screening and report and recommendation pursuant to 28 U.S.C. § 636 and Northern District of Florida Local Rule 72.2(C).  Upon consideration, the undersigned respectfully recommends this action be DISMISSED for failure to state a claim upon which relief can be granted.[1]  Namely, despite twice amending his complaint, Plaintiff has failed to cure any of the deficiencies previously identified by the Court.

_____

[1] Although the undersigned recommends this matter be dismissed on the merits for failure to state a claim on which relief can be granted, the undersigned notes that, as a separate basis, this matter is also subject to dismissal based on Plaintiff's failure to disclose his complete litigation history. Namely, Plaintiff failed to disclose the following Eleventh Circuit Appeal: *Berger v. Sgt. Nahir Gil, Jr., et al.*, No. 19-10905-JJ (filed June 3, 2014).

## I.    BACKGROUND

Plaintiff, an inmate of the Florida Department of Corrections ("FDOC"), currently incarcerated at Walton Correctional Institution ("Walton"), initiated this action by delivering a civil rights complaint to the prison staff at Santa Rosa Correctional Institution ("Santa Rosa CI"), where he was originally housed, and where the events in question occurred.  ECF Doc. 1.  Before the Court screened that initial complaint, Plaintiff filed a first amended complaint, against twenty-five (25) Santa Rosa CI correctional officers and medical personnel alleging claims of deliberate indifference, excessive force, and retaliation.  ECF Doc. 8.

The Court screened the first amended complaint and found it to be deficient. ECF Doc. 10.  As set forth in the Court's deficiency order, Plaintiff's first amended complaint was an improper shotgun pleading, replete with conclusory allegations, which failed to provide sufficient notice to any of the Defendants of the claims alleged against them.  Indeed, the Court struggled to understand or decipher, as to each Defendant, what constitutional violations Plaintiff was alleging and the facts supporting any such constitutional violations.  Although the Court was skeptical Plaintiff could more carefully craft his complaint to state a cause of action, the Court nonetheless allowed him an opportunity to do so.

However, despite informing Plaintiff of the deficiencies with his first amended complaint in a 29-page order, and that failure to cure these deficiencies

may result in dismissal of this action, Plaintiff's second amended complaint, while slightly more coherent, contains no significant changes.[2]   Thus, Plaintiff's second amended complaint fares no better.

## II.    THE SECOND AMENDED COMPLAINT

In the second amended complaint, Plaintiff sues nineteen (19) Defendants, all of whom he alleges are correctional officers or medical personnel employees at Santa Rosa CI: (1) Colonel Jackson, (2) Captain Rakers, (3) Captain Turner, (4) Lieutenant Neel, (5) Lieutenant Wheaton[3], (6) Lieutenant Hughes, (7) Lieutenant McCrain, (8) Lieutenant Goodard, (9) Major White, (10) Assistant Warden Smith, (11) Duty Warden Barlow, (12) Officer Young, (13) Officer Scrubbs, (14) Officer Cheeks, (15) Officer Heaton, (16) Officer Seaman, (17) Dr. Rodriguez, (18) Nurse Mayes, and (19) Nurse Bray.  ECF Doc. 12 at 3-4.

The following allegations are taken from Plaintiff's second amended complaint and accepted as true for purposes of this report and recommendation.

At approximately 11:00 a.m. on November 16, 2020, Plaintiff arrived at Santa Rosa CI as a close management prisoner.  *Id.*  "Awhile later [Plaintiff's] name was

---

[2] Plaintiff's second amended complaint omits claims against Defendants, Booker, Dykes, Misak, Heston, Lowery, Dennis, and Degard.  Also, Plaintiff sues Defendants only in their individual capacities and has omitted a claim for retaliation.

[3] Plaintiff originally listed Defendant Wheaton in his initial complaint but then listed him as Defendant Whidden in his first amended complaint.  Plaintiff has again switched back to referring to this Defendant as Defendant Wheaton.  Since Plaintiff's second amended complaint serves as the operative pleading, the undersigned will refer to this Defendant as Defendant Wheaton.

called" by two nurses, who asked if Plaintiff if he had "any passes medications or supplies that need[ed] filling or wounds [that needed] treated." *Id.*  Before Plaintiff responded, one nurse typed Plaintiff's "identification # into the computer" and noticed "an entry on 8/13/19 . . . for [an] Alvesco/Xopenex prescription." *Id.* at 6-7.  The nurse then told Plaintiff that he was "good to go but [needed to] sign [the] asthma notification" form. *Id.* at 7.  The nurse also told Plaintiff that "policy demands you be given a window to have all these passes valid for 30 days or until [your] next visit with Dr. Rodriguez [and] you [have a] scheduled visit for x-ray (chest) and emergency/ urgent referral for ultrasound (testicals) coming up in [the] next two weeks." *Id.*

When Plaintiff "turned to leave," he was stopped by Officer Young, who asked Plaintiff, "what exactly [are] all these passes for.  You handicap inmates have become needy by the minute." *Id.*  In response, Plaintiff "provided [a] copy of [his] health pass issued by FDOC and explained to Officer Young [his] "recent injuries to the groin/private area chest neck and the daily struggle with pain due to neuropathy (feet), degenerative disc disease (back), leg numbness, and severe mesolectal condition." *Id.*

At approximately 1:30 p.m., Plaintiff "observed Of[ficer] Young and Lieutenant Neel intentionally destroy [his] authorized compression hose[,] hernia belt[,] and therapeutic boots . . . without notifying medica before confiscating then

destroying." *Id.* An "officer seated at the next table," who overheard Lieutenant Neel and Officer Young "angrily stated[,] 'yall better call medical first before yall throw away his . . . medical supplies/devices because I aint witness to this bulshit again with yall throwing tossing their stuff (property) out.'" *Id.*

Later, when Plaintiff was outside of the property building, he "informed several corrections officials of [his] inability to carry [his] personal property due to recent injuries to the groin/testicals chest and neck coupled with ongoing painful conditions for which [he] suffered from for the past two years that prevent [him] [from] performing daily activities [and] manual tasks for which [he] was issued [a] health pass." *Id.* at 8. Specifically, Plaintiff told the officers, he had an "authorized health pass for the following: no lifting[,] pushing[,] pulling[,] cane restricted activities[,] compression hose[,] [back] brace[,] [and] therapeutic boots." *Id.* Plaintiff does not identify the officers with whom he spoke.

Regardless, Plaintiff alleges, despite his pleas of inability to carry personal property . . . that weighs[s] over 20lbs which exceed[s] [the] authorized limits of [his] health pass," his "medical emergency was" denied by Captain Rikers, Officer Young, Lieutenant Neel, Lieutenant Wheaton, Lieutenant McCrain and Officer Cheeks. *Id.* As a result, Plaintiff "was forced to abandon [his] property against [his] free will." *Id.* At some point thereafter, Plaintiff alleges his "prescribed asthma inhalers (alvesco/Xopenex)[,] hernia belt[,] therapeutic boots[,] and prescription

glasses were confiscated and destroyed" at the direction of Captain Rikers, Lieutenant Wheaton, Lieutenant McCrain, Lieutenant Neel, and Officer Cheeks.  *Id.* at 9.

At some point later, Officer Young taunted Plaintiff, stating, "back brace have you thought of the pain you've cause your victims when you committed your crimes.  You will get no sympathy from either of us so consider this your debt to Suwannee and Warden Lane" (not a named Defendant).  *Id.*  Plaintiff responded, stating, "that aint my name but yall gone find out when I file the civil complaint about this cruel and unusual punishment and deliberate indifference for denying my emergency."  *Id.*  Then "unexpectingly," Officer Young used a "pressure point tactic man[e]uver," which caused Plaintiff to feel a "shocking and numbering pain to [his] entire body."  *Id.*  Plaintiff claims that although Captain Rikers, Lieutenant Neel, Lieutenant McCrain, Lieutenant Wheaton, and Officer Cheeks, "were in the immediate area [and] had the opportunity to intervene," they failed to do so.  *Id.*

The remainder of Plaintiff's allegations address various sick calls or purported medical emergencies and Defendants' failure to respond.  On November 18, 2020 at approximately 2:30 p.m., Plaintiff "declared [a] medical emergency due to difficulty breathing[,] chest pains[,] and shortness of breath."  *Id.* at 9.  However, Plaintiff claims that Officer Heaton and Officer Seaman "denied" this request "or delayed access to medical personnel capable of treating [his] pain."  *Id.*

On November 19, 2020, at approximately 9:30 p.m., Plaintiff again notified Lieutenant Hughes, Colonel Jackson, Lieutenant McCrain, Lieutenant Neel, Captain Turner, Officer Scrubbs, Officer Cheeks, and Lieutenant Wheaton that he was experiencing "extreme pain (lower back/groin/testicals swelling) which was denied by all." *Id.* at 9.

Then on November 20, 2020, at approximately 10:30 a.m., Nurse Bray appeared at Plaintiff's cell and stated that she "was sent by the Warden and Dr. Rodriguez about the numerous sickcalls [Plaintiff] [had] filed" and that Plaintiff was "put on ice until [he] simmer[ed] down with these complaints grievances." *Id.* at 11.

Five days later, on November 25, 2020, "at approximately 8:30 a.m., "[Plaintiff] stopped Asst. Warden Smith with [a] medical emergency request due to [his] inability to breathe and lower back pain." *Id.* at 9. Despite his request, however, "Asst. Warden Smith, Major White, and Capt. Turner walked [a]way" without notifying medical. *Id.*

On November 28, 2020, "at approximately 8:30 a.m.," Plaintiff informed Duty Warden Barlow that "[his] authorized medical supplies/devices i.e. (inhalers[,] hernia belt[,] therapeutic boots[,] prescription glasses etc.) [had] being illegally confiscated and destroyed" as wells as declared a "medical emergency due to severe pain." *Id.* at 9. Duty Warden Barlow "took [a] photo of" Plaintiff's "face sheet" and

told Plaintiff, "I took [a] picture and will call about emergency." *Id.* Plaintiff became aware that Duty Warden Barlow never notified medical, because later, "during medication rounds," a nurse told Plaintiff that "nobody called . . . about [his] emergency" and she would know because his "family calls enough about [his] inhalers." *Id.*

Roughly a week later, on December 3, 2020, Plaintiff "began experiencing severe breathing complications of chest pains and shortness of breath during Lieutenant Goodard's security rounds in echo dorm at approximately 5:30-6:00 am everyday from the 3rd until the 6th of December w[h]ere Lieutenant Goodard wrote down [Plaintiff's] name/DC # as reminder but never returned with [a] nurse nor called in [an] emergency." *Id.* at 10.

Then, "in the early morning of December 4, 2020, at approximately 1:30 am. [Plaintiff] was pulled out [of] assigned cell #1109 and escorted to medical for emergency due to severe wheezing chest pain and shortness of breath." *Id.* at 10. Dr. Rodriguez was notified via telephone and subsequently "prescribed (methylprednisolone) tablets for [Plaintiff's] severe lung inflammation," as well as ordered a "pain shot and ibuprofen." *Id.* The attending nurse told Plaintiff that she was "filing [a] referral to see the doctor" and that she had "spoken with the doctor over the phone" and that the doctor knew about them (security) losing your inhalers."

*Id.* The attending nurse also informed Plaintiff that "Dr. Rodriguez said she will see [him] first thing Monday morning." *Id*.

Plaintiff, however, claims that "Dr. Rodriguez failed to perform follow up" even though "she personally indicated being aware of security losing [his] asthma inhalers and [his] daily pain from recent injuries to the chest[,] neck[,] and testicals" and that she "was deliberately indifferent to [his] serious medical needs (asthma)." *Id.* Plaintiff asserts this decision resulted in an "easier and less efficacious route in" treatment. *Id.* at 10.

The following day, "at approximately 8:30 a.m.," Plaintiff "stopped both Nurse Bray and Nurse Mates" and attempted to declare a medical emergency for "shortness of breath wheezing and chest pains." *Id.* At that point [in] time[,] [Plaintiff] was without [his] inhalers for over 2 weeks." *Id.* Although Nurse Bray stated she would "pull [Plaintiff] when [she] [got] back" and that she would "call the doctor to see what to do," Nurse Bray "said she would not walk all the way over" and that Dr. Rodriguez would see him Monday. *Id.*

## III.  LEGAL STANDARD

Because Plaintiff is a prisoner seeking relief against governmental employees, the Court is required to review his complaint, identify cognizable claims, and dismiss the complaint, or any portion thereof, if it "(1) is frivolous, malicious, or fails to state

a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b).

Dismissals for failure to state a claim are governed by the same standard as Federal Rule of Civil Procedure 12(b)(6). *See Mitchell v. Farcass*, 112 F.3d 1483, 1485 (11th Cir. 1997). To survive dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To state a plausible claim for relief, plaintiffs must go beyond merely pleading the sheer possibility of unlawful activity by a defendant; plaintiffs must offer factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Additionally, because Plaintiff is proceeding *pro se*, the undersigned will liberally construe his allegations. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011).

## IV. DISCUSSION

As the Court did in the deficiency order, the Court finds it appropriate to categorize Plaintiff's claims as follows: (1) claims of deliberate indifference under the Eighth Amendment relating to the Defendants' alleged confiscation of his medical supplies or denial of his medical pass when he arrived at Santa Rosa CI; (2) claims of deliberate indifference under the Eighth Amendment relating to Defendants' failure to provide Plaintiff with medical treatment in response to

purported "medical emergencies", and (3) claims of excessive force and failure to intervene based on Defendant Young's conduct when Plaintiff arrived at Santa Rosa CI. For the reasons set forth below, the undersigned finds each of these claims should be dismissed and because Plaintiff has attempted to amend his complaint twice already, and a third opportunity would be futile.

### A. Deliberate Indifference to a Serious Medical Need Based on Confiscation of Medical Supplies or Denial of Medical Pass

As stated above, Plaintiff claims several defendants destroyed or confiscated his medical supplies upon arrive and also failed to accommodate a no lifting pass, resulting in him having to "abandon" his personal property.

To state a claim for deliberate indifference to a serious medical need under the Eighth Amendment, Plaintiff must allege facts sufficient to show (1) a substantial risk of serious harm; (2) defendant's deliberate indifference to that risk and (3) causation. *See Hale v. Tallapoosa Cty*, 50 F.3d 1579, 1582 (11th Cir. 1995). The first element is an objective one, and requires Plaintiff to show he had a serious medical need. *See Farmer v. Brennan*, 511 U.S. 825, 846 (1994). "A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009). "[T]the medical need must be one that, if left unattended, poses a substantial

risk of serious harm." *Id.* (citing *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003)).

The second element is a subjective one. *Id.* To satisfy the second element, Plaintiff must show (1) each defendant had subjective knowledge of a serious risk of harm, and (2) each defendant disregarded that risk (3) by conduct that is more than mere negligence. *Farrow*, 320 F.3d at 1245 (11th Cir. 2003) (quotations omitted). The third element, causation, requires Plaintiff to show his injury was caused by Defendants' alleged wrongful conduct. *Cooper v. Rogers*, 968 F. Supp. 2d 1121, 1131 (M.D. Ala. 2013). Plaintiff must set forth facts showing the existence of all three elements to overcome a motion to dismiss. *Id.*

Plaintiff alleges Defendants Young, Neel, Rikers, Wheaton, McCrain, and Cheeks violated his Eighth Amendment rights when they either confiscated and destroyed his medical supplies or refused to honor a medical pass. As the Court told Plaintiff in the deficiency order, Plaintiff's amended complaint is a stream of consciousness description of events that contain allegations that appear to contradict each other or cannot be reconciled with one another. For example, Plaintiff alleges in one paragraph that he "observed" Officers Young and Neel "intentionally destroy" his compression hose, hernia belt and therapeutic boots, yet, in another paragraph he alleges that *later* his inhalers, hernia belt, therapeutic boots and prescription glasses "were confiscated and destroyed by security" at the direction of

Defendants Young, Neel, Rikers, Wheaton, McCrain, and Cheeks.[4]    Regardless, even reading Plaintiff's allegations as contending all of these officers destroyed or confiscated his medical supplies and disregarding his no lifting pass, Plaintiff has not stated an Eighth Amendment claim.

In the Court's deficiency order, the Court made clear to Plaintiff he cannot meet the objective or subjective elements of a deliberate indifference claim simply by alleging that he had medical passes and Defendants knew of those passes.  *See Crook v. Hercule*, No. 4:09CV275/RS-WCS, 2009 WL 4899003, at *1 (N.D. Fla. Dec. 14, 2009) (recommending that Plaintiff's second amended complaint be dismissed because "Plaintiff has not shown any serious medical need requiring that he have . . . a [medical] pass").  Instead, Plaintiff must allege facts to show he actually suffered from a serious medical condition and Defendants were subjectively aware of that serious medical condition.

Plaintiff's second amended complaint, however, continues to fail to include any such facts as to Defendants Neel, Rikers, Wheaton, McCrain, and Cheeks. Instead, as to those Defendants, Plaintiff simply alleges he told "the officers" he had authorized medical passes and could not "carry personal property due to

---

[4] In the first amended complaint Plaintiff states he "observed" the "compression hose thrown in the corner", not "destroyed" and does not allege Young destroyed them or threw them away. Instead, he alleges Young left the table "without returning" the "authorized medical supplies/devices."  ECF Doc. 8 at 3.  Because these allegations are so different, the Court finds it necessary to remind Plaintiff that his complaints are executed under penalty of perjury.

experiencing extreme pain to back groin/testicles, legs, and chest." ECF Doc. 12 at 8. He does not identify any medical conditions necessitating the boots, belt or hose. Also, there are no allegations Plaintiff told these Defendants *or* Defendant Young he suffered from asthma or why he needed the inhaler. Although the "nurses" who checked Plaintiff in when he arrived at Santa Rosa CI saw a note in the computer regarding asthma, there is no indication Defendants Young, Neel, Rikers, Wheaton, McCrain, and Cheeks had access to, or were aware of, the same information.

Plaintiff's failure to tell the Defendants he suffered from specific medical conditions precludes Plaintiff from meeting either the objective or subjective elements of a deliberate indifference claim. *See Roney v. Clark*, No. 407CV80-SPM/WCS, 2007 WL 2096335, at *3 (N.D. Fla. July 17, 2007) ("Plaintiff has not alleged a serious medical need for which he should be provided passes for a low bunk, no heavy lifting, and prolonged standing. He asserts he was wounded in the back from a gunshot in 1972, but fails to describe a current serious medical condition justifying such passes").

As District Judge Paul held in *King v. Corr. Corp. of Am.*, 512CV312MP-CJK, 2015 WL 5043078 (N.D. Fla. Aug. 26, 2015), plaintiff failed to allege facts sufficient to meet the objective or subjective prongs because, despite plaintiff's allegation that he "spent several hours explaining his medical pass to defendants," plaintiff also admits he did not relate the underlying medical condition to them.

*King*, 2015 WL 5043078 at *1. Thus, Judge Paul adopted the magistrate judge's recommendation of dismissal of the amended complaint at screening because "despite being allowed to amend his claims, plaintiff ha[d] not adequately plead the objective prong". *Id.* This Court should do the same here.

As an additional matter, although, Plaintiff does add more facts in the second amended complaint as to Young, including claiming he provided Young "copy of health pass" and explained his "recent injuries" and "daily struggle with pain" because of neuropathy, degenerative disk, leg numbness and severe musculoskeletal condition," ECF Doc. 12 at 7, Plaintiff's deliberate indifference claim against Young (as well as the other Defendants) fails because he has not shown any of these Defendants' conduct caused an injury. In other words, even assuming Plaintiff's explanation to Young was sufficient to show Plaintiff suffered from a serious medical need and that Young was deliberately indifferent for destroying the hose, belt and boots, there are no allegations any of these Defendants' conduct injured Plaintiff.

The second amended complaint, like the first amended complaint, is devoid of any allegations of injuries resulting from Plaintiff's failure to have his hose, belts or boots. Like any tort claim, Plaintiff must show that his injury was caused by Defendants' wrongful conduct. *See Cooper*, 968 F. Supp. 2d at 1132. Because

Plaintiff has not done so, his deliberate indifference claim fails, and should be dismissed.

Similarly, Defendants' failure to honor the no lifting pass *could not* have caused Plaintiff any physical injury because Defendants did not make him lift anything greater than 20 lbs.  To the contrary, what Plaintiff alleges is that because he could not carry more than 20 lbs. and because Defendants would not carry the property for him or get someone else to carry the property, he had to "abandon" his property (which he does not identify, despite being given an opportunity to do so). To the extent Plaintiff's injury is his loss of personal property, such loss is "not cognizable under Section 1983" because Plaintiff has available state post-deprivation remedies.  *See Parratt v. Taylor*, 451 U.S. 527, 541–44 (1981)*; Wagner v. Higgins*, 754 F.2d 186, 187 (6th Cir. 1985) (citing *South Dakota v. Opperman,* 428 U.S. 364 (1976)).

The only injury Plaintiff complains of is from an alleged asthma attack, which occurred weeks later.  Although Plaintiff alleges an inhaler is one of the items "destroyed" by security officers at the direction of Defendants Young, Neel, Rikers, Wheaton, McCrain, and Cheeks, this alleged injury does not save his deliberate indifference claim because, as stated above, Plaintiff never told these Defendants he had asthma.  Thus, the undersigned recommends Plaintiff's deliberate indifference claim against Defendants Young, Neel, Rikers, Wheaton, McCrain, and Cheeks, for

either destroying his medical supplies and not accommodating his no lifting pass be dismissed.

## B. Deliberate Indifference to a Serious Medical Need Based on Failure to Provide Medical Treatment

As in his first amended complaint, Plaintiff continues to allege a deliberate indifference claim against Defendants Heaton, Seaman, Hughes, Jackson, McCrain, Neel, Turner, Scrubbs, Cheeks, Wheaton, Assistant Warden Smith, White, Duty Warden Barlow, Goodard, Dr. Rodriguez, Nurse Bray, and Nurse Mates for failing to respond to his "medical emergencies." ECF Doc. 12 at 9-11. In the Court's deficiency order, the Court advised Plaintiff he failed to allege facts sufficient to show (1) that he suffered from a serious medical need or (2) that any of these Defendants knew Plaintiff suffered from a serious medical need. Despite the Court's warning, Plaintiff has added no additional facts to support these claims. Instead, as with his first amended complaint, Plaintiff's second amended complaint contains nothing more than conclusory allegations of wrongdoing.

Plaintiff alleges Defendants Heaton, Seaman, Assistant Warden Smith, White, and Turner, "denied or delayed access to medical personnel capable of treating [his] pain" when "he declared [a] medical emergency due to difficulty breathing[,] chest pains[,] and shortness of breath," ECF Doc. 12 at 9. Additionally, Plaintiff claims he stopped Assistant Warden Smith "with [a] medical emergency request due to inability to breathe and lower back pain" but Assistant Warden Smith, Defendant

Turner, and Defendant White "walked away from [his] cell without notifying medical." *Id.*

Similarly, Plaintiff alleges he notified Defendants Hughes, Jackson, McCrain, Neel, Turner, Scrubbs, Cheeks, and Wheaton, "of extreme pain (lower back/ groin/ testicals swelling) which was denied by all." ECF Doc. 12 at 9. Plaintiff also claims he told Duty Warden Barlow his medical supplies had been taken but Barlow did not call a medical emergency. ECF Doc. 12 at 10. Plaintiff also claims he notified Defendant Goodard that he was experiencing "severe breathing complications[,] chest pains[,] and shortness of breath" and although Defendant Goodard wrote down Plaintiff's "name/DC #" he did not return with his medical supplies or call in a medical emergency. *Id.*

Plaintiff's self-described medical emergency and subjective allegations of pain do not equate to a serious medical need. *See Martelus v. Hattaway*, 3:17cv-242-LC-CJK, 2018 WL 4495030 (N.D. Fla. Aug. 1, 2018) (Plaintiff's subjective complaints of lower back pain are not sufficient to establish a serious medical need."); *Cargill v. House*, 2019 WL 1757554 at *4 (N.D. Ala. Mar. 27, 2019) ("Without more, a prisoner's subjective complaints of pain, unsupported by any corroborating medical evidence or obvious outward signs of injury, do not, in and of themselves constitute factual allegations plausibly suggesting the existence of a serious medical need.")

There is nothing from Plaintiff's conclusory statement from which the Court (or the Defendants) can identify the "level of and the severity of harm" alleged. *King*, 2015 WL 5043078 at *1.  Plaintiff also does not identify any medical conditions from which he claims he suffered or allege that these Defendants were actually aware of such medical condition.  There are no facts showing any of these Defendants were actually aware Plaintiff suffered from a serious medical need. Purely conclusory allegations devoid of facts cannot support a cause of action.  *See Beck v. Lamour*, No. 2:11-CV-646-FTM-29, 2011 WL 5459633, at *3 (M.D. Fla. Nov. 10, 2011) (dismissing Plaintiff's complaint for failure to state a claim because "beyond Plaintiff's conclusory allegations that Defendant Lamour was deliberately indifferent to Plaintiff's serious medical need," Plaintiff's complaint did not "contain any facts supporting" such allegations).

Moreover, to survive dismissal, Plaintiff must allege facts showing Defendants acted with "a sufficiently culpable state of mind." *Swain v. Junior*, 961 F.3d 1276, 1285–86 (11th Cir. 2020).  "[T]he deliberate-indifference standard sets an appropriately high bar." *Id.*  Establishing deliberate indifference requires Plaintiff to show "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000).  Thus, Defendants' response to Plaintiff's serious medical need must be "poor enough to constitute an unnecessary and wanton infliction of pain, and not

merely accidental inadequacy, negligen[ce] in diagnosi[s] or treat[ment], or even [m]edical malpractice." *Id.* at 1258 (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

Plaintiff's second amended complaint, like his first amended complaint, however, is devoid of any facts showing any of these Defendants acted with a culpable state of mind by failing to follow up or respond. There is no indication these officers did more than walk by Plaintiff's cell at one point or another. At best, their conduct was negligent, but negligent conduct does not support an Eighth Amendment claim. *See Estelle*, 429 U.S. at 106 ("a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment"); *Swain*, 961 F.3d at 1285-86, *quoting Farmer*, 511 U.S. at 836.

Finally, Plaintiff's claims against Dr. Rodriguez, Nurse Bray and Nurse Mates, fail because Plaintiff's claims against these medical providers amount to nothing more than a dispute over medical treatment. Although Plaintiff attempts to insinuate otherwise, this is not a case where the doctor and nurses did not provide medical treatment to Plaintiff. Plaintiff admits, for example, that Dr. Rodriguez "prescribed . . . tablets for severe lung inflammation," gave him a pain shot, ibuprofen, and said that she would see him on the following Monday. ECF Doc. 12 at 10. Plaintiff takes issue with Dr. Rodriguez's treatment as being an "easier and

less efficacious route." *Id.* Plaintiff complains that Nurse Bray told him she would "pull him out," but then changed her mind and said that Dr. Rodriguez would see him Monday. ECF Doc. 12 at 10. He complains Nurse Bray and Nurse Mates "never performed a triage," *id.,* but does not allege any facts to show one was needed or that their failure to do so was to "punish."

A mere difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment, however, does not support a claim of cruel and unusual punishment. *See Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (citing *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)) ("[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment."). Thus, Plaintiff's claim of deliberate indifference to a serious medical need against Defendants Dr. Rodriguez, Nurse Bray, and Nurse Mates should be dismissed.

## C. Excessive Force and Failure to Intervene

Finally, Plaintiff alleges Defendant Young violated his Eighth Amendment rights when he used excessive force and assaulted him and that Defendants Rikers, Neel, Wheaton, McCrain, and Cheeks failed to intervene to prevent such force. Specifically, Plaintiff alleges he "unexpectingly . . . felt [a] shocking numbing pain to the entire body w[here] Of[ficer] Young unjustifiable and gratuitous use of force

applied in effort to cause harm maliciously and sadistically that failed to prove any penological purpose with several state law tort claims of assault and battery." Plaintiff seeks for Young to be federally and criminally prosecuted.

To determine whether force was applied "maliciously and sadistically," courts consider the following factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell v. Sikes*, 169 F.3d 1353, 1375 (11th Cir.1999) (quotations and citations omitted).

Here, Plaintiff provides no facts to show that excessive force was used. Instead, Plaintiff's allegations are purely conclusory.  Plaintiff provides no details concerning the use of force.  Plaintiff does not identify the force used, what part of his body was allegedly battered, or how so.  He does not state how long the force was applied or how it was excessive.  He merely describes whatever force was used as "excessive" and describes his pain.  Bald allegations of wrongdoing, even when accompanied by certain buzz words, is simply not sufficient under Federal Rule of Civil Procedure 8. *See Papasan v. Allain*, 478 U.S. 265, 286 (1986)) (noting courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

Regardless, as the undersigned stated in the deficiency order, not every push or shove results in a constitutional violation, particularly where there is "discernable injury." *See Wilkins v. Gaddy*, 599 U.S. 34, 38-9 (2010). While the lack of a serious injury does not preclude an Eighth Amendment claim, the extent of the injury can be indicative of the use of force. *Smith v. Sec'y, Dep't of Corr.*, 524 F. App's 511, 513 (11th Cir. 2013) ("while a lack of a serious injury is relevant to the inquiry, 'injury and force . . . are only imperfectly correlated and it is the latter that ultimately counts.'" (citing *Wilkins,* 599 U.S. at 38)). In other words, the lack of a more than *de minimis* injury is indicative of *de minimis* use of force. *See id.*, 524 F. App'x at 513 (finding "the attack was no more than a *de minimis* use of force," where there was "lack of a serious injury."); *Oliver v. Adams*, No. 5:13cv209-WS-GRJ, 2015 WL 4603703, at *4 (N.D. Fla. July 30, 2015) ("A *de minimis* use of force, as evidenced by no injury, typically cannot support a claim of excessive force.").

Plaintiff's allegation of "numbing pain" without more, such as its duration, what area of the body it affected, or the severity of the pain, does not show that any force used was more than *de minimis*. Thus, Plaintiff has not stated a claim against Defendant Young for excessive force.

Finally, although Plaintiff alleges Defendants Rikers, Neel, McCrain, Wheaton, and Cheeks "were in the immediate area [and] had the opportunity to intervene," these defendants cannot be liable for failing to intervene when Plaintiff

has not alleged sufficient facts to state an Eighth Amendment excessive force claim. *See Bash v. Patrick*, 608 F. Supp. 2d 1285, 1297, n.7 (M.D. Ala. 2009 (nothing that the derivate theory of failure to protect "cannot support liability when there was no underlying use of excessive force" (citing *Fundiller v. City of Cooper City*, 777 F.2d 1436, 1441-42 (11th Cir. 1985)).

## V.    CONCLUSION

Accordingly, it is respectfully RECOMMENDED:

1.    Plaintiff's second amended complaint (ECF Doc. 12) be DISMISSED for failure to state a claim upon which relief can be granted.

2.    The Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims.[5]

3.    The clerk be directed to close this file.

Done at Pensacola, Florida, this 30th day of July, 2021.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Where a court finds no federal jurisdiction, the Court should decline to exercise supplemental jurisdiction over a plaintiff's state law claims. *See Barcena v. Dep't of Off-St. Parking of City of Miami*, 492 F. Supp. 2d 1343, 1358 (S.D. Fla. 2007) (declining to exercise supplemental jurisdiction over Plaintiff's state law claims because "Plaintiff's claims based on federal constitutional violations . . . fail as a matter of law").

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days of the date of this report and recommendation.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties.  A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**